UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        CASE NO: 8:07-cr-342-T23-MAP

YOUSSEF SAMIR MEGAHED,

    Defendant.
_____/

## **ORDER**

On January 23, 2009, the defendant filed his "Second Motion to Suppress Illegally Searched and Seized Computer Hard Drives and Request for Evidentiary Hearing" (Doc. 332). In support of the motion to suppress certain internet history recovered from a desktop computer seized from the Megahed family residence by agents of the Federal Bureau of Investigation ("FBI") on August 6, 2007, the defendant asserts (a) that the FBI lacked a valid third-party consent to seize and search the computer hard drive, (b) that by removing and creating a mirror image copy of the hard drive the FBI exceeded the scope of the third-party consent, and (c) that the FBI discovered the internet history in the course of a search conducted after revocation of the third-party consent. Following the United States' response (Doc. 338) and the defendant's reply (Doc. 346), a suppression hearing occurred on March 12 and 13, 2009.

Because the United States produced the internet history more than eight months after the January 9, 2008, discovery deadline,[1] the internet history is situated similarly to the evidence excluded by a May 2, 2008, order. The United States lodged an interlocutory appeal pursuant to 18 U.S.C. § 3731, the order was summarily affirmed, and the mandate issued. In light of the earlier order, the unsuccessful appeal, and the attendant delay, this present evidence should receive no more favorable consideration than the earlier untimely produced evidence. An interlocutory appeal is not an available device to avoid or evade the operation of a discovery deadline. The internet history, in tandem with the earlier evidence, is already excluded from the United States' case-in-chief pursuant to the pretrial order and Rule 16, Federal Rules of Criminal Procedure. The defendant's "Second Motion to Suppress Illegally Searched and Seized Computer Hard Drives and Request for Evidentiary Hearing" (Doc. 332) is therefore due to be denied as moot. To the extent the relief requested is not moot, the motion is due to be denied as untimely because filed long after the pretrial motion deadline. Finally, even if not moot and not untimely, the motion is subject to denial on the merits for three reasons.

First, the FBI possessed a valid and voluntary third-party consent to remove and search the computer hard drive. Generally, a warrantless search of a home conforms to the Fourth Amendment if based on voluntary consent by a third party with "common authority over or other sufficient relationship to the premises or effects sought to be

---

[1] See Doc. 59 (October 24, 2007, pretrial discovery order); Doc. 73 at 3 (extending the United States' time to file Rule 16(a) disclosures to January 9, 2008, and the pretrial motions deadline to January 23, 2008).

inspected." United States v. Matlock, 415 U.S. 164, 171 (1974); see also Illinois v. Rodriguez, 497 U.S. 177, 186 (1990) (extending Matlock's rationale to a home search conducted with the consent of a co-occupant whom the police reasonably but mistakenly believe to possess shared authority over the premises). The United States bears the burden of proving voluntariness. Bumper v. North Carolina, 391 U.S. 543, 548 (1968). Facts communicated to the FBI on August 6, 2007 (e.g., that Samir Megahed, along with his wife, rented the residence and paid the monthly rent) warranted the reasonable belief that Samir Megahed had authority to consent to a search of the home and its contents, and Special Agent Palenzuela's credible testimony as to the circumstances of the August 6, 2007, interview demonstrates that Samir Megahed's consent was voluntary. Further, the defendant's absence (which was not procured by the agents who obtained Samir Megahed's consent or by the agents who conducted the search) renders inapplicable the narrow exception to Matlock and Rodriguez recognized in Georgia v. Randolph, 547 U.S. 103, 120 (2006) (holding that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident") (emphasis added); see also Randolph, 547 U.S. at 126 (Breyer, J., concurring) ("The Court's opinion does not apply where the objector is not present 'and object[ing].'") (emphasis added); United States v. Henderson, 536 F.3d 776, 777 (7th Cir. 2008) ("[Randolph's] holding applies only when the defendant is both present and objects to the search of his home") (emphasis added); United States v. Hudspeth, 518 F.3d 954, 961 (8th Cir. 2008) ("[T]he absent, expressly objecting co-inhabitant has 'assumed the risk' that another

co-inhabitant 'might permit the common area to be searched.'") (quoting Matlock, 415 U.S. at 171 n.7).  Even if applicable to the facts of this case, United States v. Murphy, 516 F.3d 1117, 1124 (9th Cir. 2008) ("[W]hen a co-tenant objects to a search and another party with common authority subsequently gives consent to that search in the absence of the first co-tenant the search is invalid as to the objecting co-tenant"), on which the defendant relies, "essentially reads the presence requirement out of Randolph," Henderson, 536 F.3d at 784, and has been rejected persuasively by the Seventh and Eighth Circuits as inconsistent with binding Supreme Court precedent.

Second, the seizure and search of the computer hard drive fell within the scope of a valid third-party consent.  A consent search does not violate the Fourth Amendment "because it is . . . reasonable for the police to conduct a search once they have been permitted to do so."  Florida v. Jimeno, 500 U.S. 248, 250-51 (1991).  "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness–what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  Jimeno, 500 U.S. at 251.  "In assessing reasonableness, [the court] consider[s] what the parties knew to be the object of the search at the time the search occurred."  United States v. Street, 472 F.3d 1298, 1308 (11th Cir.), cert. denied, 127 S. Ct. 2988, 168 (2007).  Special Agent Palenzuela credibly testified (a) that Samir Megahed's consent on August 6, 2007, to a search of the Megahed family residence (although accompanied by an expression of concern for possible physical damage from a search) was accompanied by no stated limitation or restriction on the scope and (b) that, when advised of the right to be present during the

search, Samir Megahed declined[2] and instead offered his key to the residence to Special Agent Palenzuela. Further, the English and Arabic consent forms (Forms FD-26 and FD-26.1[3]) executed by Samir Megahed authorize (a) a complete search of the residence and (b) a seizure of "any items which [FBI agents] determine may be related to their investigation." Although consent may be limited by the expressed purpose of the search, see Jimeno, 500 U.S. at 251 ("The scope of a search is generally defined by its expressed object"); United States v. Pena, 143 F.3d 1363, 1368 (10th Cir. 1998) ("The scope of a consent to search 'is generally defined by its expressed object, and is limited by the breadth of the consent given.'"),[4] Special Agent Palenzuela suggested to Samir Megahed that the FBI agents would look for (among other things) bombs, bomb-making materials, and anything that could be used to manufacture or build a bomb. Special Agent Palenzuela's description of the investigation to Samir Megahed (according to Special Agent Palenzuela's credible testimony) as one involving bombs and bomb-making materials was broad enough to include information about explosives or bomb-making that might reasonably be found on the family computer that (as the defendant's sister informed Special Agent Palenzuela), the defendant used for internet

---

[2] Special Agent Palenzuela also testified that after Special Agent Palenzuela reminded Samir Megahed of his right to be present during the search during a telephone conversation later that evening (when Samir Megahed called to inquire whether the search was completed), Samir Megahed expressed no desire to be present and no inclination to withdraw or limit his earlier consent.

[3] Government's Exhibit 1 (Mar. 12, 2009, evidentiary hearing).

[4] See also United States v. Dichiarinte, 445 F.2d 126, 129 (7th Cir. 1971) ("Government agents may not obtain consent to search on the representation that they intend to look only for certain specified items and subsequently use that consent as a license to conduct a general exploratory search."); 4 Wayne R. LaFave, Search and Seizure § 8.1(c) (4th ed.) ("When a purpose is included in the request, then the consent should be construed as authorizing only that intensity of police activity necessary to accomplish the stated purpose.").

- 5 -

shopping.  Cf. United States v. Wong, 334 F.3d 831, 836 (9th Cir. 2003) (warrant authorizing search of computers for "data as it relates to this case" not overly broad because maps, travel information, and other information pertinent to murder investigation could "reasonably be found on a computer"); cf. United States v. Carey, 172 F.3d 1268, 1274-75 (10th Cir. 1999).  In short, a reasonable person assessing the exchange between Special Agent Palenzuela and Samir Megahed would have concluded that the FBI agents intended a complete search of the Megahed residence for (among other things) explosives, explosive materials, and evidence relating to explosives and bomb-making and that "items which [FBI agents] determine may be related to their investigation" would not exclude information stored on a home computer. Further, according to the credible testimony of Special Agents Palenzuela and Humphries, when requesting on August 7, 2007, that the computer be returned after the FBI copied the hard drive, Samir Megahed expressed no objection either to the removal of the computer or to the copying.[5]  See, e.g., United States v. McRae, 81 F.3d 1528, 1538 (10th Cir. 1996) ("[F]ailure to object to the continuation of the search . . . may be considered an indication that the search was within the scope of the consent.").  Additionally, on the following day, Samir Megahed expressed no regret regarding his earlier consent, announced no intent to withdraw or limit the consent,[6] but instead

---

[5]  Indeed Special Agent Palenzuela testified that during the August 7, 2007, telephone conversation with Samir Megahed, it was Samir Megahed who (to Special Agent Palenzuela's surprise) first referred (without objection or expression of displeasure) to the copying of the hard drive.

[6]  Special Agent Humphries testified that during his conversation with Samir Megahed about the case and why the FBI had requested consent to search the residence, Samir Megahed conveyed the impression that the FBI's removal of a toy boat belonging to Samir Megahed's youngest son, Yasin, was "capricious."

- 6 -

expressly and (as the circumstances demonstrate) voluntarily authorized a complete search of the computer by executing a "consent to search computer" (Form FD-941[7]).

Third, the October, 2007, revocation of consent by the defendant and the defendant's parents[8] does not require suppression of the internet history.  After agents searched the Megahed residence, seized the computer, captured a mirror image copy of the hard drive, and returned the hard drive to Samir Megahed, the evidence was discovered in the course of an examination of the FBI mirror image copy.  In October, 2008, neither the defendant nor Samir Megahed retained a reasonable expectation of privacy in the mirror image copy that the FBI had obtained already with Samir Megahed's consent and had begun already to search.  The revocation did not operate retroactively to nullify this history.  See United States v. Ponder, 444 F.2d 816, 818 (5th Cir. 1971) ("[A] valid consent to a search . . . carries with it the right to examine and photocopy.");[9] Mason v. Pulliam, 557 F.2d 426, 429 (5th Cir. 1977) (affirming an order that directed the return of original records and documents voluntarily provided to an IRS agent after withdrawal of consent but agreeing that the taxpayer's "withdrawal and reinvocation does not affect the validity of [the agent's] actions prior to the time he received notice that his right to retain Mason's papers was gone.  The district court correctly refused to require the return of copies made prior to the demand by Mason's

---

[7] Government's Exhibit 2.  Special Agent Humphries testified that after he explained to Samir Megahed that the executed consent forms would authorize a search of the mirror image copy, Samir Megahed not only failed to object but also expressed a continued desire to cooperate.

[8] See Defendant's Ex. 1-2.

[9] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent decisions of the former Fifth Circuit rendered on or before September 30, 1981).

attorney.") (emphasis added); United States v. Ward, 576 F.2d 243, 244-45 (9th Cir. 1978) (adopting the reasoning of Mason as to the use of records following revocation but concluding that "any evidence gathered or copies made from the records [before revocation] should not be suppressed.") (emphasis added).

## CONCLUSION

In summary, the defendant's "Second Motion to Suppress Illegally Searched and Seized Computer Hard Drives and Request for Evidentiary Hearing" (Doc. 332) is **DENIED AS MOOT**, **DENIED AS UNTIMELY**, and **DENIED ON THE MERITS**.

ORDERED in Tampa, Florida, on March 18, 2009.

*/s/ Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE